700 P.2d 849

SELECTIVE RESOURCES, et
al., Petitioners,

v.

SUPERIOR COURT of the State of Arizo-
na, In and For the COUNTY OF PI-
NAL; Judge Robert R. Bean, a judge
thereof; and Arizona Public Services
Company, Respondents.

Herbert E. BLOOM and Naomi G. Bloom,
his wife; David A. Bloom and Leona G.
Bloom, his wife; Theodore F. Bloom
and Alexandria S. Bloom, his wife, Pe-
titioners,

v.

SUPERIOR COURT of Arizona, In and
For the COUNTY OF PINAL; Judge
Robert R. Bean, a judge thereof; and
Arizona Public Service Company, Re-
spondents.

TITLE SECURITY AGENCY OF ARIZO-
NA; Silver Reef Development Corpora-
tion; and Greater Arizona Ranches,
Inc., Petitioners,

v.

SUPERIOR COURT of Arizona, In and
For the COUNTY OF PINAL, Judge
Robert R. Bean, a judge thereof; and
Arizona Public Service Company, Re-
spondents.

No. 2 CA–SA 0105.

Court of Appeals of Arizona,
Division 2.

Oct. 25, 1984.

Reconsideration Denied Nov. 28, 1984.

Review Denied Feb. 26, 1985.

Robert C. Stubbs & Associates, P.C. by Robert C. Stubbs and G. Lawrence Schubart, Tucson, for petitioners.

Snell & Wilmer by Charles K. Ayers and Joseph A. Dunn, Phoenix, for respondent Arizona Public Service Co.

## OPINION

BIRDSALL, Chief Judge.

This case presents an issue of public importance pertaining to the scope of relevant evidence in eminent domain proceedings for which we have no precedent in this state. For this reason, and because petitioners have no equally plain, speedy, and adequate remedy by appeal, we assume jurisdiction and grant relief.

The petitioners in this special action are the owners of real property located in Pinal County which is the subject of condemnation proceedings initiated by respondent Arizona Public Service Company (APS) to obtain an easement for the construction and maintenance of a 220,000 volt electrical transmission line. Part of the subject property apparently has been subdivided into individual lots 75 feet by 100 feet and the APS easement would cover the northerly 28 feet of these lots.

The special action was taken from the trial court's granting of a motion in limine by APS to preclude the petitioners from introducing any evidence relating to alleged health hazards resulting from the construction and operation of the electrical transmission line. The evidence sought to be admitted by the petitioners which was the subject of the motion in limine consists of the testimony of expert witnesses concerning the adverse biological effects of exposure to electromagnetic fields. APS argued before the trial court that the only issue in a condemnation case is property value, and that the only evidence relevant to that issue is evidence which pertains either to the fair market value of the property condemned or the damage, if any, to the remainder. With regard to the latter, APS contends that the only question is whether, as a result of the condemnation of the transmission line easement, petitioners' remaining property is worth less than similar property which is not near transmission lines, and that the only evidence relevant to that question is the testimony of a qualified appraiser. The testimony sought to be admitted by petitioners, APS argues, pertains only to the validity or reasonableness of public fears, if any, of such transmission lines. Having offered to stipulate that the petitioners need only establish 1) the *existence* of public fear on the date of valuation, whether or not such fear is valid or reason-

able, and 2) the effect of that fear on market values, APS argues that the proffered testimony would be irrelevant, prejudicial, and a waste of the court's time. The trial court agreed on all three grounds.

■ APS's arguments are predicated on the assumption that petitioners will be entitled to severance damages resulting from the alleged health hazard created by the transmission line *only* if they can prove that a fear of residing close to such lines existed in the public on the date of valuation and that such fear adversely affected the value of the petitioners' remaining property. Implicit in its argument is that a health hazard created as a direct result of the taking, of which the general buying public is unaware, is irrelevant to the issue of just compensation. We cannot agree.

■ Article 2, § 17 of our constitution provides that "[n]o private property shall be taken or damaged for public or private use without *just compensation* having first been made ..." (emphasis added). The emphasized term has been defined by our supreme court as "[t]he equivalent in money which places the owner in as good a position financially as he would have been if his property had not been taken...." *Defnet Land & Investment Co. v. State ex rel. Herman,* 103 Ariz. 388, 442 P.2d 835 (1968). The statutes governing eminent domain proceedings require the trier of fact to determine not only the value of the property taken but also:

[i]f the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff. A.R.S. § 12–1122(A)(2).

Damages to the remaining parcel of land consist of the difference between its value immediately before the date the summons for condemnation is filed and its value immediately after severance. *State ex rel. Herman v. Tucson Title Insurance Co.,* 101 Ariz. 415, 420 P.2d 286 (1966); *City of Tucson v. LaForge,* 8 Ariz.App. 413, 446 P.2d 692 (1968). In awarding severance damages, the trier of fact may consider any change in the highest and best use of the remaining property resulting from the taking. *State ex rel. Herman v. Schaffer,* 105 Ariz. 478, 467 P.2d 66 (1970).

■ The general rule in Arizona is that valuation for eminent domain purposes is to be determined by market value, defined as the highest price which the land would bring if exposed for sale in the open market with reasonable time allowed in which to find a purchaser, buying with knowledge of all the uses and purposes to which it was adapted and for which it is capable. *Viliborghi v. Prescott School District No. 1,* 55 Ariz. 230, 100 P.2d 178 (1940); *Mandl v. City of Phoenix,* 41 Ariz. 351, 18 P.2d 271 (1933); *Mastick v. State,* 118 Ariz. 366, 576 P.2d 1366 (App.1978).

■ Is the landowner entitled to a lesser amount for his property or in damages merely because potential buyers did not know at the time of the taking or damaging that there was a pre-existing condition or a condition created as a result of the taking which adversely affected the value of the land? We believe not. The following quote from 4 Nichols on Eminent Domain, § 12.231[1], pp. 12–130, 131 (rev. 3d ed. 1981) applies here:

By reason of the fact that some period of time must elapse under our forms of procedure between the date as of which the valuation must be made and the date when the valuation process is actually applied, the trier of the facts often finds itself confronted with information affecting value which was latent or unknown at the time of the taking. The difficulty experienced in the handling of such information has stemmed from use of the "market value" concept as an end in itself, rather than as a means to an end. Used as an end in itself, it obviously follows that since such knowledge was unknown at the date of the taking, it could have no influence one way or the other upon the market value on that date.

However, rules relating to the fixing of damages merely afford convenient

measures of value which are ordinarily satisfactory and conclusive. They are, nevertheless, nothing more than a means to an end and that end is complete indemnity.

The concept enunciated by Nichols that market value is not an end in itself has been followed in Arizona in *State ex rel. Herman v. Southern Pacific Co.*, 8 Ariz.App. 238, 445 P.2d 186 (1968), where the court noted that the concept of just compensation should not be reduced to a formula applicable in all situations.

The Constitution, both State and Federal, requires "just compensation". This court holds that in meeting this test the trial court must use the measure of damages which is most appropriate under the circumstances to insure fair compensation to the landowner whose property rights are taken. The constitutional test makes it mandatory upon the trial court to determine what is fair and just compensation, and to use this method or formula to arrive at this amount of damages. 8 Ariz.App. at 242, 445 P.2d 186. As noted above, our courts have adopted a definition of market value predicated on an informed buyer—that is, one who has knowledge of all the uses and purposes to which the subject property is adapted and for which it is capable. *Viliborghi v. Prescott School District No. 1, supra; Mandl v. City of Phoenix, supra.* This is a "mythical" buyer who is deemed to be aware of all factors which affect the value of the land in relation to its highest and best use. *See Mastick v. State, supra.* The condemnee is not required under this rule to establish the existence on the date of valuation of a specific group of potential buyers who have actual knowledge of all factors which may affect the value of the property remaining after the condemnation. He need only establish that the severance or the construction of the improvement in the manner proposed by the condemnor will affect his remaining land in a manner which would diminish its value to a prospective buyer who is informed of the conditions resulting from the severance. Such conditions may affect the suitability of the remaining land for the purposes for which it was used or capable of being used prior to the condemnation, or may completely change its highest and best use. In either event, evidence of the changed conditions resulting from the severance or the construction of the improvement in the manner proposed directly relevant to the issue of the damages contemplated by A.R.S. § 12–1122(A)(2) and is also admissible to support the conclusions of valuation experts. The evidence offered by the petitioners was highly relevant, and definitely not a waste of time, nor was it prejudicial within the meaning of Rule 403, Rules of Evidence, 17A A.R.S., and the trial court erred in excluding it. The order of the trial court granting APS's motion in limine is vacated, and the cause is remanded for further proceedings consistent with this opinion.

HATHAWAY and HOWARD, JJ., concur.