SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT, an agricultural improvement district organized and existing under the laws of the State of Arizona, | ) ) ) ) ) ) ) |
| | |

SALT RIVER PROJECT AGRICULTURAL    ) Arizona Supreme Court
IMPROVEMENT AND POWER DISTRICT,    ) No. CV-07-0207-PR
an agricultural improvement         )
district organized and existing    ) Court of Appeals
under the laws of the State of      ) Division One
Arizona,                            ) No. 1 CA-CV 05-0730
                                    )
          Plaintiff/Appellant/ ) Maricopa County
              Cross Appellee,  ) Superior Court
                                    ) No. CV2002-017637
              v.                    )
                                    )
MILLER PARK, L.L.C., an Arizona     )
limited liability company;          ) **O P I N I O N**
MILLER PARK II, L.L.C., an          )
Arizona limited liability           )
company,                            )
                                    )
          Defendants/Appellees/ )
              Cross Appellants. )
                                    )
_____)

Appeal from the Superior Court in Maricopa County
The Honorable Ruth Harris Hilliard, Judge

**AFFIRMED IN PART, VACATED IN PART AND REMANDED**
_____

Opinion of the Court of Appeals, Division One
216 Ariz. 161, 164 P.3d 667 (2007)

**VACATED**
_____

JENNINGS, STROUSS & SALMON, P.L.C.                        Phoenix
     By   Douglas Zimmerman
          Michael J. O'Connor
          John J. Egbert
Attorneys for Salt River Project Agricultural
Improvement and Power District

BRYAN CAVE LLP                                              Phoenix
        By    Steven A. Hirsch
              Rodney W. Ott
Attorneys for Miller Park, L.L.C. and
Miller Park II, L.L.C.

AYERS & BROWN, P.C.                                         Phoenix
        By    Charles K. Ayers
              Melinda A. Bird
              Stephanie Heizer
Attorneys for Amicus Curiae City of Phoenix
_____

**B A L E S**, Justice

¶ 1      This condemnation case presents two issues.  We hold that the trial court did not abuse its discretion in excluding evidence of the land owner's prior statements of valuation for property tax purposes.  We also hold that mandatory cost-based sanctions may be imposed under Arizona Rule of Civil Procedure 68 even though Arizona Revised Statutes ("A.R.S.") § 12-1128(A) (2003) gives trial courts discretion to apportion costs among the parties in condemnation actions.

## I.

¶ 2      Miller Park, LLC and Miller Park II, LLC ("Miller Park") bought undeveloped land near Buckeye in 1997 and 2000. Buckeye subsequently annexed the property and rezoned it for general commercial purposes.  By the end of 2001, Buckeye's Planning Development Board had approved Miller Park's "concept plan" for the property's commercial development, water and sewer service had reached the edge of the property, and nearby

residential population had grown significantly.

¶ 3     In February 2002, Miller Park contracted to sell part of the property to a developer for more than $17.4 million, or about $4.00 per square foot.  One month later, the Salt River Project Agricultural Improvement and Power District ("SRP") announced its intention to condemn part of the land, including some of the property under contract to the developer, to build a 500,000-volt electric transmission line.  When notified of SRP's plans, the developer canceled its purchase.  SRP eventually condemned an easement extending over sixteen acres and installed thirteen utility towers on Miller Park's property.

¶ 4     In September 2002, SRP filed this condemnation action to determine the compensation owed to Miller Park.  Before trial, Miller Park moved to exclude evidence regarding its April 2001 protest of the county's property tax assessment of the property.  The Maricopa County assessor had set the "full cash value" at $18,500 per acre.  Deloitte & Touche Property Tax Services ("Deloitte") filed a tax protest on behalf of Miller Park arguing that the full cash value of the property was less than $10,000 per acre.  Before trial, a Deloitte employee testified at a deposition that he had only calculated the "full cash value" for property tax purposes and had not attempted to assess the fair market value.

¶ 5     The trial court granted Miller Park's motion in limine

and excluded evidence regarding the protest of the property tax valuation. At trial, Miller Park's managing member, Michael Pierce, testified that the property's fair market value was $174,240 per acre ($4.00 per square foot). He said that the fair market value of the property condemned for the easement was $2.4 million and that the severance damage to the remaining property was $3.1 million. The parties also presented conflicting expert appraiser testimony regarding the fair market value.

¶ 6     The jury determined that just compensation for SRP's condemnation was approximately $4.7 million – $2.5 million for the fair market value of the condemned property plus $2.2 million for severance damage to the remaining property.

¶ 7     Before trial, SRP had rejected Miller Park's offer of judgment for $2.3 million. After the jury awarded a higher sum, Miller Park requested sanctions under Rule 68 of the Arizona Rules of Civil Procedure. The trial court denied this request, reasoning that because A.R.S. § 12-1128(A) permits discretionary cost awards in condemnation cases, it precludes the imposition of cost-based sanctions under Rule 68. The trial court instead used its discretion under A.R.S. § 12-1128(A) to award Miller Park some costs.

¶ 8     SRP appealed the exclusion of the tax protest evidence and Miller Park cross-appealed the denial of Rule 68 sanctions.

4

The court of appeals held that the trial court had not abused its discretion by excluding the evidence. *Salt River Project Agric. Improvement & Power Dist. v. Miller Park, L.L.C.*, 216 Ariz. 161, __ ¶ 35, 164 P.3d 667, 674 (App. 2007). The court of appeals also held that, at least in cases in which a land owner seeks sanctions against a condemnor, Rule 68 sanctions may be imposed. *Id*. at __ ¶ 50, 164 P.3d at 678.

¶ 9        We accepted review because this case presents two recurring issues in condemnation cases. Our jurisdiction is based on Article 6, Section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

## II.

¶ 10        We first consider whether the trial court abused its discretion by excluding statements that Miller Park made through its agent Deloitte regarding the "full cash value" of the property for purposes of the tax protest. *See State v. Spreitz*, 190 Ariz. 129, 146, 945 P.2d 1260, 1277 (1997) (noting that trial court's decisions to admit or exclude evidence are reviewed for abuse of discretion).

¶ 11        An owner of condemned property is constitutionally entitled to "just compensation." U.S. Const. amend. V; Ariz. Const. art. 2, § 17. Just compensation equals the fair market value of the property. *City of Phoenix v. Wilson*, 200 Ariz. 2, 6 ¶ 8, 21 P.3d 388, 392 (2001). To determine market value, "the

5

fact finder must consider the highest and best use of the land."
*Id.* Valuation for property tax purposes, on the other hand, is based on the property's "full cash value," which we have interpreted as "limited to present usage." A.R.S. § 42-13301(B) (2006); A.R.S. § 42-11001(6) (Supp. 2007); *Golder v. Dep't of Revenue*, 123 Ariz. 260, 265, 599 P.2d 216, 221 (1979) (discussing limitation on full cash value in A.R.S. § 42-11054(C)-(D) (Supp. 2007)).

¶ **12** Because of the difference in valuation standards, tax assessments are generally inadmissible to show the value of property for purposes of just compensation. *See, e.g.*, *Jackson v. Pressnell*, 19 Ariz. App. 221, 222, 506 P.2d 261, 262 (1973) (holding "that the mere production" of a tax appraisal "is not admissible . . . on the issue of fair market value in a condemnation hearing"). An owner's own valuation for tax purposes, however, may be admissible in non-tax contexts as a party admission. *See* Ariz. R. Evid. 801(d)(2); *see also* 5 J. Sackman, *Nichols on Eminent Domain* ("*Nichols*") § 18.12[1] (3d ed. 2006) (noting that statements of the owner, including "a statement made to the tax assessor that his property is not as valuable as the assessment," "may become admissions").

¶ **13** SRP argues that statements Miller Park made in its tax protest were admissible either as admissions as to the property's value or for purposes of impeaching the testimony of

Miller Park's representative Michael Pierce.  SRP further contends that the trial court erroneously excluded such evidence as irrelevant by following a court of appeals opinion that was later depublished, *see State ex rel. Mendez v. Am. Support Found., Inc.*, 209 Ariz. 321, 100 P.3d 932 (App. 2004), *depublished by* 210 Ariz. 232, 109 P.3d 571 (2005), and by disregarding this Court's opinion in *State ex rel. Morrison v. Jay Six Cattle Co.*, 88 Ariz. 97, 353 P.2d 185 (1960).

¶ **14**     Miller Park moved to exclude the evidence under both Rule 402 and Rule 403 of the Arizona Rules of Evidence.  Rule 402 generally provides that relevant evidence is admissible and irrelevant evidence is not.  Under Rule 403, relevant evidence may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Ariz. R. Evid. 403.

¶ **15**     In granting the motion in limine, the trial court did not specify whether its ruling was based on Rule 402, Rule 403, or both.[1]  SRP in effect asks us to presume that the trial court relied only on Rule 402 and, after the case has proceeded to a

---

[1]  The trial court's minute entry stated only that it had "considered all legal memoranda, the court's file and the relevant law."

jury verdict, to order a new trial because the excluded evidence was relevant. Under our case law, however, we instead presume in these circumstances that the trial court also relied on Rule 403 and we will uphold the trial court's ruling if supportable under that rule. *See Readenour v. Marion Power Shovel*, 149 Ariz. 442, 449 n.8, 719 P.2d 1058, 1065 n.8 (1986) (concluding that the trial court had exercised Rule 403 discretion in excluding evidence challenged as prejudicial, although the "record reveal[ed] neither formal invocation nor application of Rule 403").

¶ **16** SRP contends that the trial court's failure to expressly discuss its application of Rule 403 itself requires a new trial in which the trial court may, in the first instance, apply Rule 403's balancing test. SRP and its amicus cite two cases in support of this argument: *Shotwell v. Donahoe*, 207 Ariz. 287, 295-96 ¶¶ 31-36, 85 P.3d 1045, 1053-54 (2004) (remanding for new Rule 403 determination because basis of original ruling was legally insufficient), and *Yauch v. Southern Pacific Transportation Co.*, 198 Ariz. 394, 403 ¶ 26, 10 P.3d 1181, 1190 (App. 2000) (noting that Rule 403 balancing "is peculiarly a function of trial courts" and refusing to "assume that the court would have excluded . . . proffered evidence based on Rule 403").

8

¶ 17    In *Shotwell*, this Court remanded for a new Rule 403 balancing because the trial court erroneously gave conclusive weight to a non-dispositive factor.  207 Ariz. at 295 ¶¶ 31-32, 85 P.3d at 1053 (noting that trial court excluded evidence under Rule 403 "solely on the ground that the [evidence] was 'conclusory,'" yet "[a] document is not necessarily inadmissible . . . simply because it contains conclusions or is conclusory"). Similarly, the trial court in *Yauch* excluded evidence because of a legal reason unrelated to Rule 403; the court of appeals disagreed with the legal reasoning and refused to independently uphold the exclusion under Rule 403.  198 Ariz. at 403-04 ¶¶ 26-28, 10 P.3d at 1190-91.  Thus, in both *Shotwell* and *Yauch*, it was clear that the trial court had committed legal error and never conducted a proper Rule 403 balancing.  Neither case suggests that a trial court necessarily commits reversible error by failing to describe on the record its application of Rule 403.

¶ 18    Although it is generally desirable for a trial court to make a record of its Rule 403 determinations, *Readenour* provides the correct framework for evaluating the trial court's ruling here.  Miller Park sought to exclude the tax protest material under both Rules 402 and 403.  To the extent the basis for the trial court's evidentiary ruling was ambiguous, it was incumbent upon SRP to seek to clarify the record rather than to

proceed to trial and later seek to upset the jury's verdict on appeal by arguing that the ruling could not be sustained on one of two possible grounds.[2]

¶ **19**     Presuming the evidence was sufficiently probative to meet the relevance threshold of Rule 402, we must also consider whether Rule 403 supports the trial court's decision to exclude the evidence.   SRP contends that our decision in *Jay Six* establishes that the trial court should have admitted the tax protest material.   In *Jay Six*, the Court held that the trial court had erred by not allowing the state to cross-examine an appraiser who had testified about the fair market value of condemned property with the witness's own prior appraisal for federal tax purposes.   88 Ariz. at 105-06, 353 P.2d at 190-91. The Court called the error "merely technical and harmless" because, "even for purposes of impeachment," the evidence "was of slight probative force" and the state's "examination and

---

[2]     We also reject SRP's argument that a new trial is required because the trial court relied on the subsequently depublished *American Support* opinion.   Miller Park cited *American Support* in its motion in limine, but the trial court did not cite the opinion in its ruling.   *American Support* did not hold that tax protest evidence is always irrelevant and thus inadmissible under Rule 402 in condemnation cases; and depublication, while eliminating an opinion's effect as precedent, does not imply that the court of appeals erred in resolving particular legal issues.

cross-examination of the witness . . . was otherwise very extensive."  *Id*. at 106, 353 P.2d at 191.

¶ 20    *Jay Six* did not establish a per se rule that previous estimates of value for tax purposes are always admissible in condemnation actions; it merely held that the trial court abused its discretion under the circumstances of that case.  Whether a land owner's prior statements of valuation for tax purposes are admissible in a subsequent condemnation action will depend on the facts of the particular case.

¶ 21    Here, several factors suggest that the evidence was of minimal relevance and potentially confusing to the jury.  Miller Park's tax protest concerned a valuation of the property at a different time, under different conditions, and under a different standard than did the determination of fair market value for condemnation purposes.  Seventeen months had passed since Deloitte submitted the tax protest material.  During that time, Buckeye had approved Miller Park's "concept plan" for commercial development and the area had substantial residential growth.  Moreover, Deloitte focused exclusively on the property-tax specific "full cash value" of Miller Park's property in its then-current use, not on fair market value, which depends on the "highest and best use" of the land.

¶ 22    Because of the different legal standards and the nature of the property tax and condemnation valuations here, the

11

tax protest evidence had little probative value, risked jury confusion, and could have unduly wasted the time needed to introduce and explain the evidence.

¶ 23    SRP argues that it should have been allowed to impeach Pierce with Deloitte's statements.  But even assuming that the statements of Miller Park's agent may constitute a party admission in this context, the fact that the statements may not be hearsay under Rule 801(d)(2) of the Arizona Rules of Evidence does not mean they are admissible under Rules 402 and 403.  *See Shotwell*, 207 Ariz. at 295 ¶ 29, 85 P.3d at 1053 (noting that satisfying hearsay rule does not necessarily satisfy Rule 403); *cf. Nichols*, *supra* ¶ 12, § 18.12[1] at 18-85 ("The value stated by the owner may be a type of value other than fair market value, and when this is the case, the statement is generally held not to be inconsistent and therefore not admissible as an admission.").

¶ 24    Any impeachment value of the tax protest evidence was reduced because the Deloitte representative who prepared the protest did not testify at trial and Pierce, the Miller Park representative who did testify, had not participated in preparing the tax protest.  These circumstances further distinguish this case from *Jay Six*, in which the condemnor sought to examine a witness about his own prior appraisal.  Even under those circumstances, *Jay Six* concluded that the prior

12

statements had only "slight" probative value.  The probative value of the tax protest material here was even less and the trial court could properly conclude that any probative value was outweighed by the risks of confusion and unnecessary delay.

¶ 25    In short, we hold that a land owner's prior statements of valuation for tax purposes may be, but are not always, admissible in a condemnation action.  The trial court did not abuse its discretion in excluding such evidence here.

### III.

¶ 26    SRP contends that the trial court properly refused to award Rule 68 sanctions because the rule conflicts with A.R.S. § 12-1128.

¶ 27    Under Rule 68, an offeree who declines an offer of judgment and fails ultimately to obtain a more favorable judgment "must pay, as a sanction, reasonable expert witness fees and double the taxable costs . . . incurred by the offeror after making the offer."  Ariz. R. Civ. P. 68(g).  In condemnation actions, A.R.S. § 12-1128(A) states that "[c]osts may be allowed or not, and if allowed may be apportioned between the parties on the same or adverse sides, in the discretion of the court."

¶ 28    Although the rule and statute both refer to costs, there is no real conflict between the two.  The statute provides for the discretionary allocation of costs in all condemnation

13

cases. Rule 68 does not provide for the recovery of costs as such, but instead authorizes sanctions that are measured, in part, by twice the costs incurred after the offer is made. Ariz. R. Civ. P. 68(g).[3]

¶ 29    Because we conclude that Rule 68 and A.R.S. § 12-1128(A) do not conflict, we overrule in part *Pima County v. Hogan*, 197 Ariz. 138, 3 P.3d 1058 (App. 1999). In *Hogan*, the condemnor sought Rule 68 sanctions after the jury awarded the land owner less than the condemnor had offered in settlement. 197 Ariz. at 139 ¶¶ 2-3, 3 P.3d at 1059. The court of appeals held that sanctions could not be imposed because Rule 68 conflicts with A.R.S. § 12-1128(A) and requiring the land owner to pay costs as a sanction "arguably" would reduce the land owner's constitutional entitlement to just compensation. *Id*. at 140 ¶¶ 7, 9, 3 P.3d at 1060. *Cf. City of Phoenix v. Mori*, 182 Ariz. 612, 615, 898 P.2d 990, 993 (App. 1995) (holding that right to just compensation limits court's discretion to allocate costs against land owner under A.R.S. § 12-1128(A)).

---

[3]    Rule 68 sanctions may also include prejudgment interest from the date of the offer on unliquidated claims. This sanction, as the court of appeals recognized, does not apply to amounts that are already subject to prejudgment interest, as was the case here because SRP obtained an order of immediate possession and Miller Park thereby became entitled to prejudgment interest under A.R.S. § 12-1123(B).

14

¶ 30    We agree with the dissent in *Hogan* that the rule and statute can be harmonized. *See Hogan*, 197 Ariz. at 141 ¶ 13, 3 P.3d at 1061 (Howard, J., dissenting).  Because only the condemnor faces sanctions in this case, we need not decide whether applying Rule 68 against a land owner might violate the owner's right to just compensation.

**IV.**

¶ 31    For the foregoing reasons, we affirm the judgment of the superior court in part and vacate it in part, vacate the opinion of the court of appeals, and remand to the superior court for proceedings not inconsistent with this opinion.

_____
                    W. Scott Bales, Justice

CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice

15